**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| MARVIN A. SAUNDERS, | ) | No. CV 08-595-PHX-MHM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| MICHAEL J. ASTRUE, | ) ) | |
| Commissioner of Social Security | ) ) | |
| Defendant. | ) ) | |

Plaintiff Marvin A. Saunders ("Plaintiff") seeks judicial review of Administrative Law Judge ("ALJ") Ronald C. Dickinson's decision to deny Plaintiff's claim for disability insurance benefits pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2008). Currently before the Court are Plaintiff's motion for summary judgement pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("FRCP") (Dkt. #12), and Defendant Michael J. Astrue's ("Defendant") cross motion for summary judgement pursuant to FRCP 56(b) (Dkt. # 6).

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits under Title II and Title XVIII of the Social Security Act, 42 U.S.C. § 401 et seq., on August 16, 2005. (Administrative Record ("AR") 83-84). Plaintiff's application was denied originally and on reconsideration. (AR 20). On May 29, 2007, an administrative hearing was held

before the ALJ. (AR 339-62). On August 11, 2007, the ALJ issued his written decision which denied Plaintiff's application for disability. The Appeals Council denied Plaintiff's request for review, and Plaintiff initiated the current action pursuant to 42 U.S.C.§ 405(g). (AR 6-8).

## II.    BACKGROUND

### A.    Plaintiff's Medical History

On October 7, 2003, Plaintiff was treated by Pedro Rodriguez, M.D., for pain in his neck, back, and shoulder. Dr. Rodriguez ordered an MRI and prescribed pain medication and muscle relaxants. (AR 270-72). Plaintiff was unemployed at the time. (AR 272). On November 4, 2004, Plaintiff had an MRI of his spine which revealed: (1) cervical spondylosis, with moderate central canal stenosis at C5-6; (2) "[l]eft paracentral disk protrusion at C5-6 extending laterally to cause foraminal compromise," (AR 287), with an impression on the thecal sac caused by diffuse disk bulging; (3) small left paracentral disk protrusion at C4-5 causing ventral impression on the thecal sac, and slight impression on the cord; and (4) and a slight bulging disk at C3-4. (AR 287-88).

Plaintiff followed up with Dr. Rodriguez in late November 2003, complaining of shoulder and back pain. (AR 269). Plaintiff was still able to perform heavy lifting. (AR 266). The second reason Plaintiff sought treatment was that his back pain prevented him from sleeping throughout the night. Id. At this time Plaintiff was also diagnosed with hypertension. (AR 266). In February and March of 2004, Plaintiff followed up with Dr. Rodriguez and was treated for similar symptoms. During this period Dr. Rodriguez diagnosed Plaintiff as being dependent on narcotics. (AR 257, 262-65).

In March 2004, Plaintiff was treated by Zoran Maric, M.D., an orthopedic surgeon, for pain on his left side. (AR 293). Plaintiff complained that he had difficulty lifting things over his head and of difficulty sleeping as a result of his back pain. (AR 293). Dr. Maric reviewed the November 2003, MRI and X-rays and found that the X-rays revealed mild degenerative changes at L3-4 and L4-5. (AR 294). The MRI revealed a herniated nucleus pulposus at C5-6, cervical sponylosis at C5-6, and mild disk degeneration at L3-4

and L4-5. (AR 294-95). Dr. Maric stated that: (1) Plaintiff had a normal range of motion in his cervical spine; (2) that there was no lumbar tenderness; (3) that neurological finding was intact in both the upper and lower extremities; (4) he had a normal range of motion in his lumbar spine in all directions, and finally; (5) the straight leg test was negative. (AR 294).

On five separate occasions between September 13, 2004, and August 23, 2005, Plaintiff was again treated by Dr. Rodriguez for back pain and an assortment of other unrelated ailments. (AR 229-30, 232-33, 234-35, 242-43). In July 2005, Plaintiff quit his construction job when his back pain worsened. (AR 230). During this time period Plaintiff was also regularly treated for continuous hypertension. (AR 223, 230, 232, 243).

On August 30, 2005, and through October 25, 2005, Plaintiff met with Robert Waldrip, M.D., for his lower back pain. Dr. Waldrip found that Plaintiff had bilateral tenderness at the L4-5 level. (AR 165-66). Dr. Waldrip also recommended that Plaintiff discontinue his morphine usage and provided Plaintiff with exercises meant to help his back. (AR 166). Plaintiff also received steroid injections for his back pain on two separate occasions. (AR 165-66).

On October 18, 2005, Plaintiff received treatment from Dr. Jeffrey T. Bucholz, a specialist in osteopathic Medicine for lower back pain. (AR 162-65). Aggravating factors for the pain were physical exercise, climbing stairs, coughing, sneezing, and lower back movement (specifically, twisting to the left, bending backwards and forwards). (AR 162). Plaintiff's straight leg test was positive for pain. (AR 164). Dr. Bucholz also stated that Plaintiff was ambulatory, and that previous prescription medication had been effective treating Plaintiff's pain. (AR 162).

On October 25, 2005, Plaintiff saw Dr. Waldrip again. Plaintiff stated that he was continuing his Morphine treatment. However, Dr. Waldrip stated that there was nothing more that he could do for Plaintiff. (AR 167). Plaintiff was then released back to the pain clinic and Dr. Rodriguez. Id.

On November 30, 2005, Malcolm McPhee, M.D., a doctor under contract with the Arizona Department of Economic Security, examined Plaintiff. (AR 168). Dr. McPhee stated that Plaintiff had myofascial tenderness with multiple points in a fibromyagia pattern. (AR 169). Dr. McPhee thought Plaintiff had a normal-appearing gait, and found he could still briefly stand on his heels and toes. (AR 168). Plaintiff was able to side bend his trunk 30 degrees laterally and extend his back 10 degrees. Id. Plaintiff was able to hop, remove his shoes and socks from the seated position and was able to transfer himself onto the examiners table. Id. His straight leg test was negative up to 90 degrees. Id. In his report Dr. McPhee also wrote that Plaintiff "had a tendency to groan, grimace and grunt out of proportion with the gentle nature of the examination procedures." Id. Based on the examination, Dr. McPhee concluded that nothing objective prevented Plaintiff from being able to lift 50 pounds occasionally and 25 pounds regularly. (AR 169). He was also stated that Plaintiff was able to walk or stand for up to six-hours during an eight-hour work day, and that he could sit without restrictions. Id.

In December 2005, Dr. Rodriguez treated Plaintiff and found that the lower back pain was finally controlled, but that unfortunately Plaintiff was addicted to narcotics. (AR 220). In January and February of 2005, Plaintiff was treated by Dr. Bucholz on three occasions. Plaintiff was diagnosed with Sacroilitis and received an injection to address his neck and back pain. Plaintiff complained that his pain was occurring more frequently. (AR 189, 193, 197). Plaintiff continued to be fully ambulatory. (AR 190, 194, 198).

In February, March, and April of 2006, Plaintiff was treated three more times by Dr. Rodriguez. (AR 215-17). Plaintiff complained of lower back pain. During the April visit, Dr. Rodriguez said the pain was under "fair control". (AR 215). On May 4, 2006, Plaintiff was treated by Dr. Bucholz. (AR 307-09). Plaintiff again complained of lower back pain. (AR 307). Plaintiff stated that the injections he received previously had improved his back 50%, but that they had worn off. (AR 308). Dr. Bucholz observed that the Patient was able to stand comfortably during the exam and that he had a normal range of motion. Id. Dr. Bucholz did not prescribe any medication. Id.

On May 10, 2006, Plaintiff again saw Dr. Rodriguez. (AR 213-14). Plaintiff complained of lower back pain and headaches. Dr. Rodriguez counseled Plaintiff to switch jobs. (AR 213). On June 26, 2006, Plaintiff followed up with another appointment and claimed that his back pain was well controlled under the current treatment. (AR 209-10). Dr. Rodriguez also noted that Plaintiff refused to discuss any surgical approaches to alleviate the pain. Id. On March 13, 2007, Plaintiff saw Amir Goldenberg, M.D., who stated that Plaintiff was able to sit without any acute distress. (AR 333). Dr. Goldenberg also referred Plaintiff to a pain management clinic. Id.

On April 25, 2007, Plaintiff was treated by Angelo Chirban, M.D., who diagnosed Plaintiff with lumbar degenerative disk disease, and cervical disk disease. (AR 311-12). Plaintiff indicated that the pain was constant and interfered with his ability to sleep and work. (AR 311). Plaintiff's straight leg test was negative and he had no problems with any sensations in his extremities. (AR 312). On May 9, 2007, Plaintiff had a follow up visit with Dr. Chirban. (AR 310). Plaintiff had an antalgic gait but his pain relief was close to adequate and the diagnosis remained the same from the prior visit. Id.

### B. Hearing Testimony

Plaintiff's hearing conference was conducted on May 29, 2007. (AR 341). During the hearing Plaintiff stated that he had been a glass installer until June 2005, when he was laid off for not keeping up with production because of pain in his back and neck. (AR 350). Plaintiff testified that he had been told by doctors that surgery on his back would probably relieve the pain caused by the degenerative disk. (AR 351). Plaintiff also claimed that he was unable to maintain his balance without a walking cane. Plaintiff stated that he could not sit or stand continuously for more than half an hour. (AR 353-54). Plaintiff stated that he experiences back pain whenever he lifts more than five to eight pounds. (AR 354). He also claimed that he engages in few activities other than assisting his sick fiancee. (AR 354). Plaintiff said that he was able to do light household chores but that his kids help out with difficult chores. (AR 354-55). When questioned by his attorney, Plaintiff stated that his back pain caused him to have difficulty sleeping.

(AR 355-56).  Finally, Plaintiff said that on a one to ten scale his pain level was an eight.  (AR 356).

Mark Kelman, a vocational expert ("VE"), testified at the hearing.  (AR 357).  The VE stated that Plaintiff would not be able to perform any of his previous jobs if his Residual Functional Capacity assessment ("RFC")[1] was for light work with limitations on his extremities, certain postural limitations and a sit/stand option.  (AR 358).  The VE provided three types of jobs that someone with Plaintiff's RFC would be able to perform: (1) office helper; (2) select cashier positions; and (3) certain jobs in assembly production.  The VE concluded that there were a minimum of 450,000 jobs nationally and 4,500 statewide jobs that Plaintiff could perform given his limitations.  (AR 359).  The ALJ asked whether the VE was familiar enough with these occupations to know whether they allowed for a sit/stand option.  This was a required question from the ALJ since the Dictionary of Occupational Titles does not specifically refer to any jobs that have a sit/stand option.  (AR 359).  The VE stated that he had over twenty-five years experience in his field and that he had conducted surveys with dozens of companies. As a result of his surveys and experience he knew that the jobs that he described did exist.  (AR 359).  The VE concluded by saying that if all of the assertions made by Plaintiff were true then he would not be able to work at all.  (AR 360-61).

**C. ALJ's Conclusion**

On August 11, 2007, the ALJ denied Plaintiff's claim for disability insurance benefits. (AR 26). The ALJ found that Plaintiff was not disabled as defined by the Social Security Act at the time of his decision. (AR 25). The ALJ's decision was based on the

---

[1] "RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capability to do work- related physical and mental activities....Ordinarily, RFC is the individual's *maximum* capability remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis," Social Security Ruling 96-8p.

May 29, 2007 hearing as well as the requisite five-step analysis to determine whether an applicant is disabled, as provided for, under the Social Security Act**.** See 20 C.F.R. §§ 404.1420 and 416.920.  (AR 20-26).

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of August 23, 2005.  (AR 21).  At step two, the ALJ found that Plaintiff had degenerative disc disease of the cervical and lumbar spine with neck and lower back pain, sacroiliac pain, hand and leg pain, myofascial tenderness, high blood pressure, numerous somatic complaints and possible fibromyalgia.  (AR 21).  The ALJ determined that these ailments were severe.  A condition is determined severe in step two if it significantly limits the ability to perform basic work activities.  20 C.F.R. § 404.1520.

At step three the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or equal the severity requirements set forth in 20 C.F.R. Part 404, Subpart P, App. 1. Id. Listing 1.04 describes disorders of the spine:

> 1.04 Disorders of the Spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
> . . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on the appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 4 Subpt. P, App. 1, Listings 1.02A, 1.02C.  Since the impairments are not listed the ALJ moved to step four of the sequential analysis process.

Between steps three and four in the analysis, the ALJ assessed Plaintiff's RFC. The ALJ determined that Plaintiff had the RFC to perform unskilled light work with a

sit/stand option.  (AR 24).  Furthermore, he found that Plaintiff was unable to crawl, crouch, climb, squat, or kneel.  Id.  The ALJ noted that Plaintiff cannot use his lower extremities for pushing, and/or pulling, or his upper extremities for work above the shoulder level.  Id.  To support his conclusions the ALJ relied on the medical records of Dr. Robert Waltrip, M.D., Jeffrey Bucholz, D.O., Pedro Rodriguez, M.D., Amir Goldenberg, M.D., Angelo Chirban, M.D., and seemingly relied most heavily on the testimony of Malcolm McPhee, M.D.  (AR 22-23).

At step four of the analysis, the ALJ determined that based upon the VE's testimony, and Plaintiff's previous work, Plaintiff was unable to perform any of his past relevant work.  Id.  At step five, the ALJ determined that with Plaintiff's assessed RFC he could still perform unskilled light jobs.  Specifically, Plaintiff could still perform work as an office helper, parking lot cashier or assembler.  Based on the VE's testimony, the ALJ concluded that these jobs existed in significant numbers both locally and nationally.  (AR 24-26).  The ALJ also concluded that "the allegations of the claimant are not fully credible with regard to the severity and extent of his limitations.  While the claimant alleges disabling pain, examinations have not revealed extensive medical objective findings."  (AR 23).  Accordingly, the ALJ concluded that based on evidence submitted in Plaintiff's application, he was not entitled to benefits from the time his application was filed to the date of the ALJ's decision.  (AR 26).

## III.    STANDARD OF REVIEW

The Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and free from reversible error.  See 42 U.S.C. 405(g); see also Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla," but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  See, e.g., Richardson v. Perales, 402 U.S. 389, 401 (1975); Sorenson v. Weinberg, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and weigh both the evidence that supports and detracts from the ALJ's decision. See Richardson, 402 U.S. at 401; see also Tylizki v. Shalala, 999 F.3d 1411, 1413 (9th Cir. 1993). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguity." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995 (citations and quotations omitted)). The ALJ may draw inferences logically flowing from the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld." Id. (citations omitted). "If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the [ALJ's] reason for rejecting the claimant's testimony must be "clear and convincing" and supported by specific findings." Dodrill v. Shalala, 12 F.3d 915, 917 (9th Cir. 1993). "If the evidence can support either affirming or reversing the ALJ's conclusion, [then the court] may not substitute [its] judgement for that of the ALJ." Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Finally, "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant is disabled if he had credited the claimant's testimony, [the court must] remand for a calculation of benefits." Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (quotation omitted).

In order to qualify for disability insurance benefits, a claimant must establish that they are unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A) (2004). A claimant must also show that his physical or mental impairment is of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial work that exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1986).

To determine whether an applicant is eligible for disability benefits, the ALJ must conduct the following five step analysis:

(1)    determine whether the applicant is currently employed in substantial gainful activity;

(2)    determine whether the applicant has a medically severe impairment or combination of impairments;

(3)    determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)    if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)    if not, determine whether the applicant is able to perform other work that exists in substantial numbers in the national economy.

20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

**IV.    DISCUSSION**

Plaintiff contends that the ALJ erred in steps four and five of the sequential analysis process. Plaintiff argues that the ALJ's RFC assessment was insufficient as a matter of law. Finally, Plaintiff argues that no evidence exists that supports a finding that Plaintiff can sustain work. Plaintiff asks the Court to remand the case for an award to Plaintiff, or in the alternative, to remand the case for further proceedings. (Dkt. #14). Defendant asks the Court to affirm the Commissioner's final decision. (Dkt. #17).

**A.    ALJ's RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment was insufficient to meet the standards set forth in Social Security Ruling 96-8p. This court does not agree. The ALJ cited sufficient medical records to justify his conclusions. The ALJ cited the extensive medical treatment records that Plaintiff put forward, including the five different physicians Plaintiff saw between October 25, 2005, and May 9, 2007. The ALJ noted that no examining or treating physician had assessed any functional limitation on Plaintiff's ability to work. (AR 24). In 2003, Dr. Rodriguez noted that Plaintiff was still able to perform heavy lifting, (AR 266), and in 2004, Dr. Maric stated that Plaintiff had a normal range of motion, and that Plaintiff's straight leg test was negative. (AR 293). Dr.

McPhee examined Plaintiff in 2005 and wrote that Plaintiff seemed to be "overly dramatic" in his presentation. (AR 168). Plaintiff was still fully ambulatory during his 2005 examination with Dr. Rodriguez. (AR 190, 194, 198). In 2006, Dr. Bucholz and Dr. Rodriguez reported that Plaintiff was able to sit and stand without issue, (AR 308, 333), and that the pain was under control. (AR 209). Finally, as recently as 2007 upon examination by Dr. Chirban, Plaintiff had another negative straight leg test. (AR 301). The ALJ also noted that Plaintiff was still able to engage in most day-to-day activities. Id.

Plaintiff cites to Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1994), to support his argument that the ALJ must describe, in detail, the nature and extent of the sit/stand option. However, Gallant does not set forth any requirement that an ALJ must describe the nature and extent of the sit/stand option, nor does Gallant suggest that the ALJ must give it an in-depth analysis. Within the context of this case the term "sit/stand option" obviously means that Plaintiff will have the ability to sit or stand at his discretion while he is at work. Therefore, Plaintiff's assignment of error is inappropriate.

**1.      The ALJ's function-by-function assessment of Mr. Saunders RFC**

Plaintiff argues that the ALJ failed to render a function-by-function assessment of Plaintiff's RFC. This Court does not agree. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). "In determining [a claimant's] credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and inconsistencies in claimant's testimony." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Social Security Ruling 88-13 lists additional factors that the ALJ may consider.[2]

---

[2]Additional Factors listed in Social Security Ruling 88-13 are: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions;

1    The ALJ was not required to provide a function-by-function analysis since

2    sufficient evidence was presented for the ALJ to reasonably conclude that Plaintiff was

3    exaggerating his claims.  The ALJ pointed to the testimony of Malcolm McPhee, M.D.,

4    who examined Plaintiff.  Dr. McPhee stated that Plaintiff was capable of performing

5    medium work activity.  Dr. McPhee noted in a section of his report labeled

6    "IMPRESSION" that Plaintiff had an "[o]verly dramatic presentation"and groaned out of

7    proportion to the nature of the examination.  (AR 169). In the section of his report labeled

8    "PHYSICAL EXAMINATION", Dr. McPhee wrote "[Plaintiff] had a tendency to groan,

9    grimace and grunt out of proportion to the gentle nature of the examination procedures."

10   (AR 168).  As noted above, the ALJ discussed the examinations of the Claimant by Pedro

11   Rodriguez, M.D., Amir Goldenburg, M.D., and Angelo Chirban, M.D., and how none of

12   these physicians' diagnoses meet the disability classifications as set forth in 20 C.F.R. Pt.

13   4 Subpt. P, App. 1, (AR 22-24).  Based on Plaintiff's established medical history, and

14   after applying the credibility factors, sufficient evidence exists to support the ALJ's

15   determination.

16       **2. The ALJ's Consideration of Plaintiff's Subjective Complaint Testimony**

17       Plaintiff claim's that the ALJ did not properly consider his subjective complaint

18   testimony.  "An ALJ is not required to believe every allegation of disabling pain or other

19   non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citations

20   omitted).  However, "where the record includes objective medical evidence establishing

21   that the claimant suffers from an impairment that could reasonably produce the symptoms

22   of which he complains, an adverse credibility finding must be based on clear and

23   convincing reasons."  Carmickle v. Comm'r Soc. Sec. Admin, 533 F.3d 1055, 1160 (9th

24   Cir. 2008) (internal quotation marks omitted).  To comply with that standard "the ALJ

25   was required to point to specific facts in the record which demonstrates that [claimant] is

26   in less pain than [he] claims."  Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008).

27   _____

28   and (6) the claimant's daily activity.

Again, this Court notes that the ALJ may engage in ordinary techniques of credibility analysis to determine Plaintiff's propensity to tell the truth. Burch, 400 F.3d at 680.

Plaintiff's first argument is that the ALJ's erroneously discounted his testimony relating to the severity of his pain. This Court does not agree. The ALJ pointed to several factors to support his conclusions. First, the ALJ noted that there were limited objective medical findings to support Plaintiff's allegations. (AR 23). Second, Plaintiff seemed to have an overly dramatic presentation during his physical examination with Dr. McPhee. Id. Third, the ALJ wrote in his report that "[n]o treating physician has assessed limitations on the claimant's ability to perform work related activities." (AR 24). Fourth, ALJ noted that Plaintiff is still able to engage in many day to day activities. Id. Finally, the ALJ noted Plaintiff's use a unprescribed cane. Id. With these factors taken into consideration it is evident that the ALJ provided clear and convincing reasons to discount Plaintiff's pain complaints.

Plaintiff next argues that the ALJ was wrong to discredit his testimony based on Dr. McPhee's testimony since Dr. McPhee did not examine Plaintiff's MRI prior to the examination. However it has been shown that the ALJ did provide clear and legitimate reasons. Even if Dr. McPhee's report were not included in the record, the evidence supporting the ALJ's conclusions would remain clear and convincing. Id.

Plaintiff argues that the ALJ erred using Plaintiff's day-to-day activities as a means of discrediting his testimony. In order for day-to-day activities to be used to dispute credibility they must be performed at a level that transfers to the more grueling pace of a work environment. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). However, "if a claimant is able to spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair v. Bowen, 886 F.2d 597, 603 (9th Cir. 1989). There is sufficient evidence in the record to support the ALJ's decision that Plaintiff could meet this standard. The ALJ noted in his report that Plaintiff stated that he could still complete light household work,

prepare meals, go shopping, drive his car and take his grandchildren to and from daycare. (AR 107-09). Even though this evidence of the daily activities could potentially be interpreted more favorably to Plaintiff, the ALJ's interpretation was rational and must be upheld. See Barnhart, 400 F.3d at 680. (citation omitted). Plaintiff has not identified any evidence showing that he is incapable of performing the jobs the VE provided as examples.

It is also clear from the record that the ALJ took into account the conditions that aggravate Plaintiff's pain in his consideration of the claimant's RFC. This consideration is demonstrated by the ALJ's comments that "[t]he claimant is unable to crawl, crouch, climb, squat, or kneel, and can not use his lower extremities for pushing and/or pulling or his upper extremities for work above the shoulder level." (AR 24). It is clear that the ALJ did take Plaintiff's limitations and subjective complaints into account because even though no objective findings existed to justify the assessed limitation and yet the ALJ still considered in the subjective pain complaints in his determination of Plaintiff's RFC. Based on the record as a whole the ALJ had sufficient evidence to support his finding that the claimant was exaggerating his claim.

Finally, Plaintiff contends that the ALJ was wrong to consider the claimant's use of an unprescribed cane in his credibility assessment. This Court does not agree. It is established that an ALJ may not use his personal observations as the sole basis for his conclusions. However personal observations may be used as part of the general evaluation process. *See* S.S.R. 96-7p at 8.; Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). As 20 C.F.R. Pt. 4 Subpt. P, App. 1., points out, "[t]he medical basis for the use of any assistive device (e.g., instability, weakness ) should be documented." In this case there is no documentation from any physician who prescribed use of the cane. As a result, it is up to the ALJ to determine how the cane impacts Plaintiff's credibility. The ALJ assessed Plaintiff's use of the cane as part a larger evaluation process; therefore Plaintiff's assignment of error has no merit.

**2. Medical Evidence Supporting the ALJ's Finding**

Neither party disputes the ALJ's determination that Plaintiff can no longer perform his past relevant work. Therefore, "the burden shifts to the commissioner in step five to show that the claimant can still perform other substantial gainful work." Burch, 400 F.3d at 679 (citing 20 C.F.R. §§ 404.1520, 416.920). In this case the VE testified that the Claimant could perform work as an office helper, as well as select cashier positions, and certain jobs in assembly production. (AR 359). The VE testified the Dictionary of Occupational Titles does not specifically say that these jobs provide the worker with a sit/stand option. Therefore, pursuant to SSR 00-4p (Appendix 4), the ALJ was required to elicit a "reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."[3] SSR-00-4p further states that reasonable explanations for such conflicts may include information directly from the employers, or from the VE's experience in career counseling or job placement. Id.

Plaintiff argues that the ALJ was required to resolve this discrepancy in his written decision but failed to cite any decision or authority supporting this assertion. The ALJ asked the VE during the hearing whether the jobs mentioned specifically provided a sit/stand option within the Dictionary of Occupational Titles and the VE stated that they did not. (AR 359). The ALJ followed up by asking whether the VE knew whether the jobs mentioned actually did provide a sit/stand option and the VE stated that they did. Id. The VE based his testimony on having over twenty-five years experience in his field and by personally conducting surveys with employers. Id. Upon questioning from Plaintiff's attorney, the VE stated that he had conducted between fifty and one hundred surveys of companies with jobs similar to the ones that Plaintiff is able to perform with his assessed RFC. Id. Thus, the Court finds that the VE's testimony was based on reasonable information as defined by SSR 00-04P and that the ALJ's assessment of the VE's testimony was reasonable.

---

[3] "VS" stands for Vocational Specialist

Plaintiff argues that the VE's analysis did not properly consider Plaintiff's ability to stoop. SSR 83-10 provides that for the majority of light work jobs the lifting requirement entails occasional stooping. While the inability to stoop precludes the performance of the jobs provided by the VE, there is nothing to indicate that Plaintiff is incapable of stooping. This Court has determined that the ALJ's assessment of the RFC was sufficient as a matter of law. This assessment further supports the ALJ's conclusion that Plaintiff is still capable of performing jobs that require occasional stooping.

Plaintiff contends that the ALJ did not properly consider Plaintiff's self-reported sleeping difficulties. Plaintiff claims that his pain often prevents him from sleeping throughout the night, and as a result, he often requires a forty-five minute nap during the day. However, while subjective pain complaints are an important factor for the ALJ to consider, it remains within the ALJ's discretion to determine facts and draw conclusions from those facts.[4] "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." Barnhart, 427 F.3d at 1217. Since the ALJ gave clear and convincing reasons for rejecting Plaintiff's subjective pain complaints. As a result, the ALJ's decision must be upheld.

**V.   SUMMARY**

The court finds that the ALJ properly considered Plaintiff's Residual Functional Capacity and provided clear and convincing reasons to question Plaintiff's credibility. Furthermore, the reasons provided were supported by evidence such as the sparsity of objective medical evidence to support Plaintiff's claims, his current day-to-day activities, the statements by Dr. McPhee, and Plaintiff's use of an unprescribed cane. Taken

---

[4] Plaintiff's reliance on Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984) (which states that if an ALJ has no valid reason to reject subjective pain complaints then the pain restrictions must be provided to the VE within the ALJ's hypothetical), is misplaced. In Gallant, the ALJ did not provide clear and convincing reasons for rejecting the subjective pain complaints, while here, the ALJ provided clear and convincing reasons to doubt Plaintiff's credibility.

together, these facts support the ALJ's assessment that Plaintiff may exaggerate the severity of his pain. This Court also finds that the Social Security Administration met its burden of proof by showing that sufficient jobs exist within the local and national economy which Plaintiff is still able to perform. Therefore, this Court rejects Plaintiff's assignment of error and affirms the ALJ's decision to deny Social Security Benefits. **Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is DENIED. (Dkt # 12).

**IT IS FURTHER ORDERED** that Defendant's cross motion for summary judgment is GRANTED. (Dkt. # 16).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 11th day of September, 2009.

Mary H. Murguia
United States District Judge